Directors. Good morning, Your Honors. Ronald Richmond, Shulte, Roth, and Zabel for the appellant Pig Newton. We believe there are three independent reasons that the District Court's grant of summary judgment should be overturned. The first is that the trust acceptance that was upon which Pig Newton accepted participation in the plan and acceptance of the trust agreement. One of those conditions, which I'll go through in a minute, indicate that there is not supposed to be a payment of an obligation to pay contributions other than for hours worked or hours guaranteed. Isn't it work actually performed? It didn't say hours, did it? Work performed and hours worked and guaranteed, which is dramatically different than what has... Give me the exact phrase here. Sure. Because you keep substituting the word hours for the word work, and that could be really important. Well, it is set forth in two different places. Let me come first to paragraph 6 of the trust agreement because the verbiage does change in the documents. It's only for such services. That's only for such services as the employees actually rendered. With respect to the language in the collective bargaining agreements, all hours worked or guaranteed. In labor relations usage, all hours worked or guaranteed does not include contributions that are obligated to be made or guaranteed. For example, in labor relations... I don't understand that. It says all hours worked or guaranteed. That means you can pay in respect of hours that were not worked if they were guaranteed. That's right. If you look at the collective bargaining agreements and you look in the usage in labor relations, an hour that is not worked but is guaranteed is an hour, for example, an employee gets called in to come to work on a Sunday, and the boss only has a half hour of work for the employee and is sent home. Well, many collective bargaining agreements have minimum hours, as did this one, if we looked at in the appendix at page 1086. Why wouldn't minimum hours be a lot more than the extra half hour for a Saturday emergency? Why wouldn't hours guaranteed include hours and weeks for a controlling employee? Because it's hours guaranteed for payment for services. For example, the reason there are hours guaranteed is that the employee is providing the service of coming in to work. And so that is an actual service. What we have in this situation is an obligation set up by the directors that says if you work one hour in the year, we can, if you're a controlling employee, we can make you pay for 2,000 hours of contributions. You say it's set up by the directors, but from the perspective of how the documents interlock, the trust acceptance, which you're relying on, in paragraph 7, specifically, in effect, incorporates by reference and binds the signatories to the trust agreements, which says exactly what you are protesting. In other words, that you round up to 40 hours a week. Why is the trust acceptance not ultimately a harmful document to you insofar as it adopts the trust agreement? For two reasons. One is that if you go through the trust acceptance, there is in paragraph 6, there is very specific language, which is very plain, that requires that contributions be made as to employees only for such services as the employees actually rendered in connection with motion picture production. Right. But there's a thing about what actually rendered means, but paragraph 7, which incorporates the trust agreement, effectively incorporates a provision that is crystal clear, that actually worked means if you've worked some hours, you effectively round up to 40 a week. Well, it's actually not 40 a week. It is 2,000 a year. But it is, if you look at paragraph 7, what it says is, subject to the provisions of article 9 of the health plan, if you go to article 9 of the health plan, section 2, you'll see that participation in the plan either, and the acceptance of the trust agreement is either by a written signature of the trust agreement or a written instrument pursuant to which an employer agrees to participate in the plan. And the written instrument is the trustee's acceptance form. And the issue here is that we have an acceptance form that has in it an exception to the trust agreement. And this is the form by which the pig Newton agreed to participate. It says the required contributions shall be made only for services as employees actually rendered. They are being charged for contributions for which no services were rendered. And what the district court did was conflate the concept of guaranteed hours versus guaranteed contributions. And it was wrong to do that because of the trust acceptances and all throughout the collective bargaining agreements, there is no reference at all to having to pay for 2,000 hours a year in three different plans when in one year Mr. C.K. worked, I believe it was, 8 hours. If the trust agreement were the only document here, would you have an argument? If the trust agreement were the only document, no, we would not have an argument except for the argument of the conflict between the collective bargaining agreements and the trust agreement and the issue which this court has avoided in a couple of decisions as to in that situation which document ought to govern. If I may, the . . . Isn't one way to read this to suggest that the time recorded by a controlling employee is not trusted because with self-reporting, it's very easy to report the minimum work and therefore make the minimum contribution and at the same time maximize your benefits. And so shouldn't all of these agreements be read in such a way as to, if at all possible, to reflect that risk and the effort to avoid it? Well, there are two reasons. I think the answer is no to your question. One is the LaBarbera Court in the Second Circuit dealt with a provision somewhat similar to this but not nearly as draconian. That was you have to contribute for the whole month if you've got an employment. This is you contribute for the entire year. And what that court found was that provision was arbitrary and capricious. And we believe that this provision as well as arbitrary and capricious. And there are other methods that other multi-employer pension plans use on a regular basis. How is avoiding abuse capricious? Well, because it is way over the top. There are lots of other methods to deal with the issue. The court in LaBarbera took, because that was a motion for summary judgment, it accepted the but it still came to the conclusion that the rule should be overturned or invalid because it was arbitrary and capricious. No, but the problem there was that the controlling employee agreements there had not under any theory been acquiesced to by the employees. They were unilaterally adopted in effect after the fact. That's the opposite here, Well, I don't think it's the opposite here because of the reading of the trust acceptance. At the very least, I think a reasonable person reading the trust acceptance form would read paragraph six to mean what it says plainly. And I think a reasonable person would think that, okay, there are contributions that would be due for work performed and for work that's guaranteed because that's throughout the collective bargaining agreements. But they wouldn't come to the conclusion that if I work eight hours in one year, I have to pay for 2,000 hours of contributions. Thank you. You've reserved rebuttal? Yes. May it please the court. My name is Franklin Moss. I represent the three appellee funds, the health fund, the pension fund. This all could be more carefully drafted, wouldn't you think? Yes, but there's, you know, over time, over history, amendments are made and yeah, I agree. But let me point out a few. Who drafted it? It's been drafted many amendments. Some I've participated in recent years. Other people did them 20, 30, 40, 50 years ago. And so you're making an amendment to preexisting language and you don't necessarily rewrite the whole document to make it clearer or with respect to the, by the way, in addition to the trust acceptance, there's also the agreements of consent, which satisfy article nine of the health trust and so forth, which say, you know, we agree to be bound by the agreements and declarations of trust. Now there are really two responses we have to their hours worked or guaranteed argument. One is the analysis of the these are hours worked or guaranteed. And you know, my adversary refers to general labor law principles that work and guaranteed, guaranteed only has to do with hours worked and not hours for which contributions are due. But if you look at the trust agreement, there are other provisions which make clear that the hours guaranteed relate to contributions and not just hours work. There are, for example, what are called on-call employees who are referenced in, in exhibit A. On-call employee, it's a industry, entertainment industries speak for salaried people. Most people are freelance and are not salaried and they're paid by the hour. And it specifically says in exhibit A that on-call people are guaranteed certain level of contributions. Now an on-call person is a salaried person. They get their salary if they work one hour, they get their salary if they work 80 hours in a week. And the trust says, essentially, we don't care how many hours of work you're guaranteed by your employer. You're a salaried individual. And the trust sets out and it calls it a guarantee. And it says, you know, you're guaranteed, you're guaranteed a certain number of hours and the employer is obligated to contribute for that number of hours. And it's not related to the hours worked. It's related because just as it is difficult to determine with a controlling employer exactly how much time the person actually served, with a salaried employee, it's hard to determine. Did that person work 40 hours this week? Did they work 60 hours a week? So the trust has specific language that says how many hours a week the employer is obligated to contribute to. And it you're looking for the common usage in the trust as opposed to in some general principles of labor law asserted by my adversary, guarantee specifically means hours for which contributions are due. But more important than that, and I don't think the district judge had to get to this because she analyzed the word guaranteed consistent with our understanding, and that is the trust quite clearly establishes additional obligations. And if you look at the trust acceptance, it's got two provisions that I think are key. One is Article 5, Section 5 of the trust acceptances, which says that the employer is obligated to pay what they call post-60s and supplemental markets payments, which is a form of residuals. If you buy a DVD, or you watch video on demand, or you watch a movie on your television set made after 1960, the fund gets money. And in fact, about half of the fund's revenues come from these post-60s and supplemental markets payments. It has nothing to do with the hours worked and guaranteed. It's an additional obligation. And specifically, if you look at Paragraph 3 of the trust acceptances, it specifically says that the employer agrees to make contributions to the various plans in amounts and obligations in accordance with the provisions of various articles, including for the health plan, which is the one we've been citing, Article 5. Article 5 specifically starts out the first subsection of a fairly long article, says the employer agrees to contribute in accordance with the formulas set out in Exhibit A. And Exhibit A is where, among other additional obligations, besides the hourly contribution for the hours actually worked, an additional obligation is set out for the controlling employer. So it could have been more elegantly written, but I think it's all completely unambiguous. Help me understand this. If somebody is a controlling employee of a production company, that person will spend some hours doing film editing. And if there were three different unions for this, does this mean that that person has to make contributions for what amounts to 6,000 hours a year? Well, that's usually only worked in the law firms. Right. Well, it depends what categories, because the person who does the lighting and the person who does the editing are both covered by the same plan. So the employer... Let's say... The answer is, we don't know what the obligations are to the Director's Guild, to the Writers Guild, and to SAG-ASCA, which are the three other unions that this unusual person, Louis C.K., happens to be in four different unions performing lots and lots of different functions. He certainly is sui generis. To Judge Jacob's question, the real issue is, if he wanted to continue to be chief cook and bottle washer, if he wanted to continue to have different functions and each of them syncs up with a contract that requires maxing out the contribution, does he have any choice? Is there some way to avoid what seems like a confiscatory arrangement besides abandoning the union or abandoning a line of work? If he wants to maintain his own production company, the answer is no. What some employers in that situation do, and indeed attorneys from the firm that represented Mr. C.K. down below, set up a corporation, essentially a production company, that Mr. Ziegle could go work and do editing for them if they were the producer. But he's clearly a guy who wants to keep control, and so he didn't want to do this. Forgive me, what obliges him to be part of the union? What's that? What obliges him to be... They signed a collective bargain agreement that says that anybody who does editing work is covered by the union contract. Did he have to do that? There's some way in which he could have organized his affairs so as not to be subject to the union. Sure, but he might have been subject to a strike. But of course, he was free to do so. You know, he probably couldn't, or maybe not a strike, but at least he wouldn't have been able to get the skilled union craftsman. He obviously wanted a union cinematographer because he can't... If he could have, I'm sure he would have been the cinematographer too, but it's hard to run a camera when you're looking at yourself. So it is unusual, but here's the concern. And there are two magic words that actuaries scare us horribly in this business. They're called adverse selection. You know, it's the fundamental consideration behind Obamacare. And that is, you can't let people pick and choose. And you're going to have people who don't need the benefits because a spouse has coverage, because they have coverage from another union, or whatever. You have people who are very, very sick, who cost hundreds of thousands of dollars a year in health care. And you have people who are never going to go to the doctor. And if you allow picking and choosing, your costs only go up. And no plan can function that way. So you've got to say, and every multi-employer plan I know says, you know, contributions for everybody, not just people who want the coverage. There are a lot of reasons why people may not want coverage, whether it be Medicare, Medicaid, whether it's because they're covered because of a spouse. But they don't have to use the coverage. But the collective bargaining agreement says they have to make that contribution. And it's the only way you can really function. You know, in terms of the other, I don't know if there are other issues about this guarantee. I am curious. I asked this question to your adversary. And I was surprised, I think, that it wasn't your initial answer to the interpretive question. Why isn't the simple answer that the trust acceptance is subject to the trust agreement? It incorporates it in paragraph seven by reference. And the trust agreement says, in the plainest language imaginable, whatever the other problems are, you've got to pay even for hours that you didn't literally labor. Because you said so well, I don't need to say it. Well, I agree. I mean, the answer is, he specifically agreed in the agreement of consent in the trust acceptance, and he signed about five or six of them, because there were a lot of different agreements that he signed, in which he says, I agree to be bound by the trust acceptances. And there's no ambiguity that a controlling, that, in fact, there's no dispute that he was a controlling employer. He signed also a company data sheet, which is also in the record, which he says controlling individual. And once a controlling individual does bargaining unit work, until that point, there's no obligation, you know, just because you're the owner. But if you start doing editing work, or camera work, or lighting work, or makeup work, one of the dozens of other crafts that are covered by this plan, you're subject to those rules. Is there a deference issue here? Is there an issue of deference? Well, of course there is. To the trustees? Yeah. Because Judge Forrest's opinion didn't rely on that. He didn't rely on it with respect to the hours guaranteed argument. He did with respect to the definition of employee, which hasn't been raised. She was unaware, because neither of our briefs mentioned it, that the word guarantee is, in fact, a term in the trust. And so she said, she specifically said erroneously, and I think it's the only thing erroneous in her opinion, that it doesn't appear in the trust, and it does. And so it is entitled to deference. Thank you. Thank you. We'll hear rebuttal. Mr. Richmond. Thank you. I do want to get to the controlling employer issue. There is a dispute as to whether Mr. CK is a controlling employer or employee. And the problem here is the definition of employee. In order to be a controlling employee, you have to be an employee. And if you go to the trust agreement, the trust agreement specifically defines an employee with reference to the employee's principal employment with the employer. And the record is clear that the editing, which is the subject of this dispute, was not Mr. CK's principal employment. Now, the directors have said, well, you have to look at the definition and apply it so that it's principal employment in the collective bargaining agreement. But that doesn't make any sense because what you have done there is to read out the word principal. And it deals with the very issue Your Honor raised with respect to being part of two or three or four different unions that require contributions. This is a highly unionized industry. And it's not so easy to say, sure, everybody's free not to have a collective bargaining agreement. If you want to operate in this industry, you generally have to operate under a union contract. So in practice, if you were wrong about the particular issue here, is there anything that Mr. CK can do? Or is he effectively stuck, in effect, paying overlapping or duplicative? He is effectively stuck. There's really no way? And he is not sui generis. There may not be a lot of people who have four different roles, but there are people, particularly in small companies, production companies, that have more than one role. And those people get put in a situation where they're contributing four times for health benefits, and you can't use four times health benefits. But they are stuck. And the question is whether your client is similarly stuck. Yes. But getting back to the controlling employee issue, there is, we submit, no argument to be made that you can just simply read out the word principle. And that's in the trust agreement. And yes, there is deference to the trustees with respect to the trust agreement, but that reading out the word principle is arbitrary and capricious. And whatever deference level the trustees are given, whether it's that or being reasonable because they were adopting this as fiduciaries, the fact is that it is invalid because it's arbitrary. And there is case law that supports the provision that you can't just read out words. I mean, if it said will contribute, will not contribute, and the trustees decided to read out the word not, we'd end up in the same position. In terms of whether Mr. CK is an employee, that is to say whether he is principally employed in one or another of these crafts, your position is he's not in any, he shouldn't be in any of these unions because principally he doesn't do anything other than four different or five different functions. No, because it doesn't have to be majority. But if he, for example, and I don't know the splits and it's certainly not on the record, but if he spent 40% of his time acting and 30% of his time writing and 18% of his time editing, then the principle would be acting. And obviously the numbers can change. There is going to be one principle craft in which an employee is going to occupy. And isn't the concern, though, just in that situation, that if he's responsible for tallying and reporting his own hours, he can allocate the hours to the specialty that results in the smallest contribution? Well, first, like all multi-employer funds, the funds have, or the plans have, the right to conduct quite strict audits. And they have a right to see all of the payroll records. By looking at the payroll records, they will be able to see that. But if he spends, if he puts down, he spends most of his time raising funds, which most production companies have to spend a considerable amount of time raising funds, I'm sure there's no union for that. He wouldn't have to contribute to anything. The, that's a possibility. But it is, he's going to have one principle craft with respect to the production company that is going to be covered by a collective bargaining agreement. And it's just not the editing one. Thank you both. We'll reserve decision. Can I briefly respond to this employer-employee issue? Yes, and then we'll hear you again. Because the trust specifically addresses the employee issue. Because in defining employer, remember, we're talking about work for the employer. Yeah. It doesn't use the usual definition of the word employer. It says that you're an employer of somebody who's under local. What page are you on? I'm looking right now at page 642 of the trust. At 642 of the record. Yeah. Of the appendix. Of the appendix. Yeah, go ahead. I'm reading at the first paragraph. And it talks about, because remember, the definition of employee says your primary work for the employer. That's the argument my adversary is making. Employer, in turn, there's a clause that is intended to specifically address this issue. You're an employer, consider an employer with a capital E, only with respect to employees that's described in. Employer with a capital, yes, right. In certain sections. The first section, section 2BB31 has to do with camera persons under this particular subdivision that we're talking about. And then next is 2BB32, which specifically deals with editors and post-production employees, sound employees, which is what Mr. Zekely was doing. So he's, and there are other categories also. So he's only an employee with respect to work under one of these various enumerated categories. There's no other way to interpret why this language is here except to make it clear. We shall study it. Okay. Did you have any syrup bottle? No, I don't. Thank you. Thank you both. We will reserve decision.